IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Christopher Steven Spence, #11855-052, | ) ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) |
| | ) |
| Warden Ruth Yancey, | ) |
| | ) |
| Respondents. | ) |
| | ) |

Civil Action No. 6:05-3478-HFF-WMC

**REPORT OF MAGISTRATE JUDGE**

The petitioner, a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**BACKGROUND OF THE CASE**

The petitioner is currently incarcerated at the Federal Correctional Institution Williamsburg, located in Salters, South Carolina ("FCI Williamsburg"), serving a 76-month term of incarceration imposed by the United States District Court for the Northern District of New York for violation of 8 U.S.C. §§1326(a) and (b)(2), aggravated re-entry into the United States after deportation. His sentence was imposed on November 5, 2003, and his sentence computation began that same day. His anticipated satisfaction date is October 7, 2008, via Good Conduct Time release.

The record reveals that the petitioner is a native of Jamaica. He illegally entered the United States prior to 1988 and assumed the identity of Christopher Eemerson Spence [sic], then a member of the Armed Forces of the United States and a Lawful Permanent Resident and now a Naturalized Citizen of the United States. In 1994, the petitioner was sentenced to 18-54 months incarceration by the State of New York for attempted robbery. He was initially interviewed by Immigration and Customs Enforcement ("ICE," formerly known as the Immigration and Naturalization Service ("INS")) officials in 1994, but was released by the state on parole prior to initiation of deportation proceedings. In February 1998, the petitioner was detained in St. Louis, Missouri during a flight connection. He admitted to being a native citizen of Jamaica, and removal proceedings were instituted (def. m.s.j., ex. C at 3).

On February 13, 1998, an Immigration Judge ordered the petitioner removed from the United States (def. m.s.j., ex. D). A Warrant of Removal or Deportation was signed on February 23, 1998 (def. m.s.j., ex. E). The petitioner was advised that he was not allowed to reenter the United States for any reason without permission from the Attorney General (def. m.s.j., ex. F). The petitioner was removed from the United States on May 6, 1998, and returned to Jamaica.

In January 2001, the petitioner illegally returned to the United States and settled in Houston, Texas. He was subsequently arrested on charges involving the delivery of a simulated controlled substance. After serving a 180-day term, he was extradited to New York on parole violation charges. His state parole was revoked and he was returned to state prison. ICE lodged a detainer with New York authorities; however, the petitioner was released on parole again in January 2002. He returned to Houston, where he was arrested in October 2002 on kidnaping charges. Since he was still on parole from New York, the petitioner was returned to that state on a parole violation. On February 25, 2003, he was returned to Ulster Correctional Facility (def. m.s.j., ex C. at 3-4). ICE lodged a

2

detainer with the state officials on March 3, 2003 (def. m.s.j., ex. G).  The detainer referenced the original deportation order and requested notification of release and a hold on the petitioner.  The petitioner's New York term expired on March 10, 2003, and he was picked up by federal officials and ordered detained on federal charges (def. m.s.j., ex. C at 4).

On November 5, 2003, the petitioner was sentenced to a 76-month term of incarceration for violation of 8 U.S.C. §§1326(a) and (b)(2), aggravated re-entry into the United States after deportation (def. m.s.j., ex. A).  He was designated to the Bureau of Prisons and initially incarcerated at the United States Penitentiary, Beaumont, Texas ("USP Beaumont), which is a high security federal prison (def. m.s.j., ex. H).  While at USP Beaumont, Bureau of Prisons staff became aware of the ICE detainer which had previously been filed with New York State officials.  In light of this and the various statements in the presentence investigation report which indicated that ICE detainers had been filed, Inmate Systems staff at USP Beaumont completed a "Detainer Action Letter" dated January 15, 2004, and sent the document to ICE authorities.  In that letter, Bureau of Prisons staff indicated that a detainer was lodged and asked to be contacted should the detainer be lifted or no longer desired by ICE (def. m.s.j., ex. I).

On October 7, 2004, the petitioner was transferred from USP Beaumont to the Federal Correctional Institution at Beaumont ("FCI Beaumont"), a medium security prison. This transfer was based on the petitioner's need for lesser security (def. m.s.j., ex. J, K). The transfer was approved, even with the ICE detainer in the petitioner's file.

On February 2, 2006, ICE officials provided another detainer, Form I-247, to the Bureau of Prisons, this time to officials at FCI Williamsburg, where the petitioner is currently incarcerated (def. m.s.j., ex. L).

3

## PROCEDURAL HISTORY

In his petition, the petitioner raises three related issues.  First, he asserts that the ICE detainer lodged against him "by the Bureau of Prisons" is not authentic.  He asserts this "false" detainer has an adverse impact on various aspects of his confinement, including his custody level, housing status, work assignment, and eligibility for rehabilitative programs.  He alleges he is being denied his due process rights to challenge or appeal the detainer because it has not been officially issued and does not exist.  The petitioner asserts that there has been no service of the warrant and no date set to execute the fictitious detainer.  He contends that the impact of this detainer is to extend his confinement by 18 months more than he was sentenced to serve.

Next, the petitioner alleges that the Bureau of Prisons was without authority to "issue" the detainer, or reinstate a former detainer that has been previously resolved by a court.  He asserts that the document referred to by the Bureau of Prisons in the Detainer Action Letter was issued in 1998 and subsequently judicially resolved, and therefore the actions of the Bureau of Prisons are unlawful.

Finally, the petitioner asserts that his liberty interests have been violated by the imposition of this detainer.  He claims that he has a right to be housed within 500 miles of his family in Texas.  He notes that he was originally housed at FCI Beaumont and was transferred when that facility was evacuated after Hurricane Rita.  He claims that the existence of the "false" detainer prevents him from being returned to Texas near his family.

As relief, the petitioner seeks to either have a legitimate detainer produced or the false detainer and all adverse consequences therefrom removed.

On February 27, 2006, the respondent filed a motion to dismiss or, in the alternative, for summary judgment.  By order of this court filed February 28, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the

4

summary dismissal procedure and the possible consequences if he failed to respond adequately.  The petitioner filed his opposition to the motion to dismiss on March 27, 2006.

## APPLICABLE LAW AND ANALYSIS

The respondent has moved for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.  As matters outside the pleadings have been presented by the respondent and have not been excluded by this court, the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) shall be treated as one for summary judgment pursuant to Rule 56.  *See* Fed.R.Civ.P. 12(b)(6).

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

5

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

As argued by the respondent, it appears that the ICE detainer is valid. Immigration officials who wish to take custody of a federal inmate upon completion of a federal term of imprisonment must file an immigration detainer with the Bureau of Prisons ("BOP") via the ICE Form I-247 (def. m.s.j., ex. M, portions of BOP program statement 5800.13, Inmate Systems Management Manual §704). No warrant is required for immigration detainers to be lodged (*id.*). ICE lodged a detainer with New York state officials on March 3, 2003, while the petitioner's federal charges were pending (def. m.s.j., ex. G). After his conviction for aggravated re-entry into the United States afer deportation, the petitioner was transported to USP Beaumont for service of the 76-month term of imprisonment. BOP staff were provided a copy of the I-247, and they prepared a detainer

6

action letter based thereon (def. m.s.j., ex. I).  It appears that the petitioner has been advised that the detainer was not created by the BOP, and the only way for the detainer to be removed was for ICE to advise the BOP that they no longer wished to have the detainer in place (*see* pet., ex. 1).  As noted by the respondent, however, this does not appear to be the case since ICE recently sent another I-247 to FCI Williamsburg (def. m.s.j., ex. L).

The petitioner argues that he is entitled to some additional process and/or hearing prior to the imposition of the detainer or removal from the United States.  The respondent has submitted the BOP's Institution Hearing Program Statement.  That program statement sets time frames for ensuring that alien inmates facing possible deportation are transferred to a hearing site where ICE can initiate necessary proceedings prior to the expiration of the underlying sentence (def. m.s.j., ex. N).  The program expressly applies to inmates who have not been previously ordered deported (*id.*, p. 6, ¶ 8).  It specifies that inmates who have already been ordered deported will be identified by documentation from INS, now ICE, which may include an immigration detainer, as was done in the petitioner's case (*id.*, p. 10, ¶ I).  The petitioner has previously been ordered removed from the United States (def. m.s.j., ex. D), and he was advised that he could not return to this country (def. m.s.j., ex. E).  However, he returned illegally and is currently serving a federal sentence for that illegal re-entry (def. m.s.j., ex. A).  Accordingly, as he has already had a deportation hearing wherein he was ordered deported, it does not appear that he is entitled to another removal hearing.

The petitioner also argues that his custody level, housing status, work assignment, and eligibility for rehabilitative programs have been adversely impacted by the detainer.  Prison security classifications are "a necessary tool in the management and control of the penal and correctional institutions," and, as such, "lie within the sound discretion" of the agency.  *Marchesani v. McCune*, 531 F.2d 459, 461-62 (10th Cir. 1976).

7

The respondent submitted the relevant portion of the BOP's Program Statement 5100.07, Security Designation and Custody Classification (def. m.s.j., ex. O). The BOP uses a variety of information in order to determine the necessary security and custody level of each inmate. One of the factors is whether an inmate has detainers, and generally an inmate will be given points based on the severity of the offense underlying his detainer. However, an inmate is not penalized for having an immigration detainer (*id*.). Further, the evidence submitted by the respondent shows that the petitioner was transferred from a high security facility to a medium security facility after the imposition of the detainer (def. m.s.j., ex. J, K). Accordingly, the petitioner has not stated a constitutional claim.

The petitioner also alleges that his work assignments and eligibility for rehabilitative programs have been adversely impacted by the detainer. A Progress Report dated August 18, 2004, shows that the petitioner was assigned to a work detail, participated in the GED program, and completed a 40-hour Drug Abuse Program (def. m.s.j., ex. P). Further, during the administrative grievance process, the petitioner was advised of his access to a variety of programs including the drug program and the Challenge, Opportunity, Discipline and Ethics Program ("CODE"), a residential program available in high security facilities with a focus on changing criminal thinking, as well as work opportunities in Federal Prison Industries ("UNICOR") (pet., ex. 1 at p. 6). The petitioner is not eligible for placement in community confinement, which is part of the BOP's pre-release program. 28 C.F.R. §570.20(a). As argued by the respondent, an inmate like the petitioner, who has been ordered deported from the United States, will not be reintegrating into society in this country and has no incentive to comply with the terms and conditions of community placement. Further, the petitioner would not be eligible for the 500-hour residential drug abuse program, as that program necessarily entails a community-based transitional services component. However, as cited above, he is eligible and has participated in non-

8

residential drug abuse programs. *See* 28 C.F.R. §550.55. The petitioner has failed to show that his constitutional rights have been violated.

Lastly, the petitioner claims that the detainer is infringing upon his right to be housed in a prison near his family. However, prisoners have no protected interest in placement in a particular facility. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983). The BOP may assign the petitioner to any available correctional facility and may transfer him between facilities at any time. 18 U.S.C. §3621(b); *Robinson v. Benson*, 570 F.2d 920, 923 (10th Cir. 1978) (concluding a federal prisoner is subject to transfer from one correctional facility to another in the discretion of the Attorney General).

## CONCLUSION AND RECOMMENDATION

The evidence shows that the immigration detainer was appropriately entered against the petitioner by the BOP in accordance with policy. It further appears that the petitioner has been provided a copy of the document. Furthermore, the petitioner has failed to show that the respondent has violated any of his constitutional rights. Accordingly, the motion for summary judgment should be granted.

s/William M. Catoe
United States Magistrate Judge

May 23, 2006

Greenville, South Carolina

9